# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RAMON VILLALOBOS and ALBERTO VALENCIA ) ) ) Plaintiffs, ) v. ) ) JESUS TIRADO CASTAÑEDA, EDEN ) MUÑOZ, ARMANDO RAMOS, MARTIN ) LOPEZ, MARTIN AUGUSTO GUIDO, and ) UMG RECORDINGS, INC., ) ) Defendants. ) | Case Number: **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs, Ramon Villalobos and Alberto Valencia (collectively "Plaintiffs"), for their complaint against Defendants, Jesus Tirado Castañeda, Eden Muñoz, Armando Ramos, Martin Lopez, Martin Augusto Guido, and UMG Recordings, Inc. (collectively, "Defendants"), allege as follows:

## JURISDICTION AND VENUE

1. This is an action for trademark and service mark infringement, unfair competition, trademark cancellation, and related state law claims, which related claims arise out of the same operative facts.

2. This court has jurisdiction pursuant to 15 U.S.C. §1121, 28 U.S.C. §1331, 28 U.S.C. §1338 and 28 U.S.C. §1367.

3. Venue is proper in the Northern District of Illinois under 28 U.S.C. §1391 because, *inter alia*, the relevant Defendants have performed as a musical group under the disputed name within this District and/or have sold musical recordings under the disputed name

- 1 -

within this District.

## THE PARTIES

4. Plaintiff Ramon Villalobos ("Villalobos") is a citizen of Mexico.

5. Plaintiff Alberto Valencia ("Valencia") is a citizen of Mexico.

6. On information and belief, Defendant Jesus Tirado Castañeda ("Castañeda") is a citizen of Mexico.

7. On information and belief, Defendant Eden Muñoz ("Muñoz") is a citizen of Mexico.

8. On information and belief, Defendant Armando Ramos ("Ramos") is a citizen of Mexico.

9. On information and belief, Defendant Martin Lopez ("Lopez") is a citizen of Mexico.

10. On information and belief, Defendant Martin Augusto Guido ("Guido") is a citizen of Mexico.

11. Defendant UMG Recordings, Inc. ("UMG") is a Delaware Corporation with a principal place of business in Santa Monica, California.

12. This Court has personal jurisdiction over Defendants, *inter alia,* pursuant to 735 ILCS 5/2-209 in that Defendants have committed intentional tortious acts in the State of Illinois which constitute the subject matter of this action, and have transacted business within the State of Illinois.

## FACTUAL BACKGROUND

13. In about December of 1999, Villalobos and three other individuals formed a musical group under the name CALIBRE NORTEÑO. Villalobos was the founder and creative

force behind CALIBRE NORTEÑO, and he remains so to this day.

14. Villalobos formed CALIBRE NORTEÑO in Illinois, and the band's first public performances occurred in 2000 in Illinois.

15. In about March of 2000, CALIBRE NORTEÑO produced, published and began to sell an album titled "El Camaro 28."

16. In late 2000, a fifth musician joined CALIBRE NORTEÑO. CALIBRE NORTEÑO has had five members from that point through the present, with the exception of a time from 2007 to 2008 when it had six members. Some of the band members have changed over time, although Villalobos and another musician, Javier Hernandez, have been members from the band's beginning through the present.

17. In 2001, CALIBRE NORTEÑO expanded its performances far beyond Illinois, by performing in states including California, Texas, Colorado, Idaho, Nebraska, Georgia, and Florida. From 2001 through at least 2009, CALIBRE NORTEÑO toured nationally, performing in many or all of these states, plus others, each year.

18. Although most of CALIBRE NORTEÑO's performances have been in the United States, it made three separate performance tours in Mexico, in 2002, 2003 and 2006.

19. From 2000 through 2012, CALIBRE NORTEÑO has produced, published and sold eight different albums on compact disc. One such album was "Si Regresas" ("If You Return"), which was released in 2012.

20. Since 2005, Valencia has served as the manager of CALIBRE NORTEÑO. Since 2010, Valencia has served as the manager and promoter of CALIBRE NORTEÑO. As such, Valencia serves as the agent and legal representative for CALIBRE NORTEÑO. Valencia also has, and has exercised, full authority from CALIBRE NORTEÑO to use that band's name,

trademarks, logos, and publicity materials to promote the public performances and sound recordings offered by CALIBRE NORTEÑO.

21. CALIBRE NORTEÑO has achieved artistic and commercial success performing and selling albums under that name.

22. CALIBRE NORTEÑO has built up significant fame and goodwill among fans of Latin and Mexican-American music throughout the United States.

23. Villalobos is the owner of the trademark and service mark CALIBRE NORTEÑO, relating to musical performance services and sales of recorded music.

24. Villalobos is the owner of U.S. Service Mark Registration No. 3,344,730 for the mark CALIBRE NORTEÑO and Design for "live performances by a musical band." The CALIBRE NORTEÑO and Design mark appears as follows:



25. A copy of Registration No. 3,344,730 is attached as Exhibit A.

26. Plaintiffs perform music under and offer for sale recordings of music under the names and marks CALIBRE NORTEÑO and CALIBRE NORTEÑO and Design. Plaintiffs offer and sell these services and goods throughout the United States, including in the State of Illinois.

27. Plaintiffs have continuously used the CALIBRE NORTEÑO mark in commerce to identify and distinguish their goods and services from the goods and services of others.

28. Plaintiffs have continuously used the CALIBRE NORTEÑO and Design mark in

commerce to identify and distinguish their goods and services from the goods and services of others.

29. Plaintiffs have expended time, money, effort and resources in advertising and promoting throughout the United States the goods and services offered under the CALIBRE NORTEÑO and the CALIBRE NORTEÑO and Design marks, including in the State of Illinois.

30. CALIBRE NORTEÑO is a distinctive mark.

31. CALIBRE NORTEÑO and Design is a distinctive mark.

32. CALIBRE NORTEÑO is distinctive for musical performance services and for sales of recorded music.

33. CALIBRE NORTEÑO and Design is distinctive for musical performance services and for sales of recorded music.

34. Some time in or before 2010, Muñoz, Ramos, Lopez, and Guido formed a musical group and began performing under the name CALIBRE 50. On information and belief, Castañeda has acted and is currently acting as the manager and promoter for CALIBRE 50.

35. Since at least 2010, CALIBRE 50 has toured and given musical performances throughout the United States. Defendants have advertised and promoted those musical performances under the name and mark CALIBRE 50.

36. On July 13, 2012, CALIBRE 50 gave a live musical performance at the San Jose Night Club in Rockford, Illinois. Defendants promoted and advertised that performance using the name and mark CALIBRE 50. A copy of one of the printed materials promoting that performance is attached as Exhibit B.

37. On July 14, 2012, CALIBRE 50 gave a live musical performance at the Globos Ballroom in Chicago, Illinois. Defendants promoted and advertised that performance using the

name and mark CALIBRE 50. A copy of one of the printed materials promoting that performance is attached as Exhibit C.

38. On July 15, 2012, CALIBRE 50 gave a live musical performance at La Herradura in Joliet, Illinois. Defendants promoted and advertised that performance using the name and mark CALIBRE 50. A copy of one of the printed materials promoting that performance is attached as Exhibit D.

39. On December 7, 2010, CALIBRE 50 released an album of recorded music on compact disc titled "Renovar o Morir" ("Renew or Die"). This album was released by the Disa Records label, which is owned by UMG. UMG has promoted, distributed, and sold the "Renovar o Morir" album throughout the United States, including in Illinois.

40. On March 22, 2011, CALIBRE 50 released an album of recorded music on compact disc titled "De Sinaloa Para El Mundo" ("From Sinaloa to the World"). This album was released by the Disa Records label, which is owned by UMG. UMG has promoted, distributed, and sold the "De Sinaloa Para El Mundo" album throughout the United States, including in Illinois.

41. On January 17, 2012, CALIBRE 50 released an album of recorded music on compact disc titled "Mujer de Todos, Mujer de Nadie" ("Woman of All, Woman of No One"). This album was released by the Disa Records label, which is owned by UMG. UMG has promoted, distributed, and sold the "Mujer de Todos, Mujer de Nadie" album throughout the United States, including in Illinois.

42. On February 28, 2012, CALIBRE 50 released an album of recorded music on compact disc titled "El Buen Ejemplo" ("The Good Example"). This album was released by the Disa Records label, which is owned by UMG. UMG has promoted, distributed, and sold the "El

Buen Ejemplo" album throughout the United States, including in Illinois.

43. On April 20, 2010, Castañeda filed U.S. Trademark Application Serial No. 85/018,463 for the mark CALIBRE 50 with respect to "audio and video recordings featuring music and artistic performances" and "entertainment, namely, live performances by a musical band." This application was based on an alleged foreign (Mexican) trademark application, and it does not claim a first date of use.

44. On April 28, 2011, Castañeda filed U.S. Service Mark Application Serial No. 85/307,770 for the mark ARRIBA CALIBRE 50 PARIENTES and Design, with respect to "entertainment services in the nature of live musical performances; [and] entertainment, namely, live performances by a musical band." This application claimed a first use of the mark on January 4, 2010. The application matured into U.S. Service Mark Registration No. 4,181,808. The ARRIBA CALIBRE 50 PARIENTES and Design mark appears as follows:



45. On April 4, 2012, Castañeda filed U.S. Trademark Application Serial No. 85/591,999 for the mark ARRIBA CALIBRE 50 PARIENTES and Design, with respect to "compact discs featuring music; [and] pre-recorded CDs featuring music." This application claimed a first use of the mark on January 4, 2010. The ARRIBA CALIBRE 50 PARIENTES and Design mark appears as follows:



46.     Plaintiffs have been using the names and marks CALIBRE NORTEÑO and CALIBRE NORTEÑO and Design since long before Defendants' band CALIBRE 50 existed.

47.     At the time Defendants selected the name and mark CALIBRE 50, they knew about CALIBRE NORTEÑO and the latter's reputation and fame.

48.     After CALIBRE 50 emerged in 2010, CALIBRE NORTEÑO found that demand for its live musical performances declined. During the time period since 2010, the majority of CALIBRE NORTEÑO's live performances have been in Northern Illinois and surrounding areas.

49.     CALIBRE 50 is not associated with, sponsored by, approved by, or otherwise connected with CALIBRE NORTEÑO or with Plaintiffs.

50.     As a result of Defendants' activities, there has been actual confusion by the relevant public as to the source or sponsorship of CALIBRE 50's goods and services.

### COUNT I - TRADEMARK INFRINGEMENT

51.     Plaintiffs adopt and reallege paragraphs 1 through 50.

52.     The designation CALIBRE 50 is confusingly similar to CALIBRE NORTEÑO.

53.     The designation CALIBRE 50 is confusingly similar to CALIBRE NORTEÑO and Design.

54.     The designation ARRIBA CALIBRE 50 PARIENTES and Design is confusingly similar to CALIBRE NORTEÑO.

55. The designation ARRIBA CALIBRE 50 PARIENTES and Design is confusingly similar to CALIBRE NORTEÑO and Design.

56. Defendants' use of the designations CALIBRE 50 and ARRIBA CALIBRE 50 PARIENTES and Design is being done to trade off the goodwill owned by Plaintiffs.

57. Defendants' music performance services are directly competitive to Plaintiffs' music performance services.

58. Defendants' albums of recorded music are directly competitive to Plaintiffs' albums of recorded music.

59. Defendants' musical performances and albums of recorded music are offered to the same customers as Plaintiffs' musical performances and albums of recorded music.

60. Defendants' use of the designations CALIBRE 50 and ARRIBA CALIBRE 50 PARIENTES and Design is likely to cause confusion as to the source or sponsorship of Defendants' goods and services.

61. Defendants' actions have caused actual confusion as to the source or sponsorship of Defendants' goods and services.

62. Defendants' use of the designations CALIBRE 50 and ARRIBA CALIBRE 50 PARIENTES and Design constitutes trademark infringement and service mark infringement in violation of Section 32(a) of the Trademark Act (15 USC § 1114(a)).

63. Defendants' actions have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury and damage to Plaintiffs and to the goodwill associated with the CALIBRE NORTEÑO and CALIBRE NORTEÑO and Design marks.

64. Defendants' injury to Plaintiffs has been willful and intentional.

65. Plaintiffs have no adequate remedy at law.

## COUNT II - FEDERAL UNFAIR COMPETITION

66. Plaintiffs adopt and reallege paragraphs 1 through 65.

67. Defendants are attempting to profit from the goodwill associated with the CALIBRE NORTEÑO and CALIBRE NORTEÑO and Design marks.

68. Defendants are attempting falsely to suggest an association with Plaintiffs or to trade on the goodwill of the CALIBRE NORTEÑO and CALIBRE NORTEÑO and Design marks.

69. Defendants' use of the designations CALIBRE 50 and ARRIBA CALIBRE 50 PARIENTES and Design is likely to cause confusion as to the source or sponsorship of Defendants' goods and services.

70. Defendants' actions are likely to cause confusion as to the source or sponsorship of Defendants' goods and services.

71. Defendants' actions have caused confusion as to the source or sponsorship of Defendants' goods and services.

72. Defendants' actions constitute false representation and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

73. Defendants' actions have caused and will continue to cause irreparable injury to Plaintiffs unless enjoined by this Court.

74. Plaintiffs have no adequate remedy at law.

## COUNT III - COMMON LAW UNFAIR COMPETITION

75. Plaintiffs adopt and reallege paragraphs 1 through 74.

76. Defendants' actions constitute unfair competition under the common law.

77. Defendants' actions have caused and will continue to cause irreparable injury to Plaintiffs unless enjoined by this Court.

78. Plaintiffs have no adequate remedy at law.

## COUNT IV - ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

79. Plaintiffs adopt and reallege paragraphs 1 through 78.

80. Defendants' use of the designations CALIBRE 50 and ARRIBA CALIBRE 50 PARIENTES and Design is likely to cause confusion as to the source or sponsorship of Defendants' goods and services.

81. Defendants' actions have caused confusion as to the source or sponsorship of Defendants' goods and services.

82. Defendants' actions were willful and intentional, in that they were done with deliberate disregard or reckless indifference to the rights of Plaintiffs.

83. Defendants' actions violate the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2.

84. Defendants' actions are likely to and did injure Plaintiffs. Those actions have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury and damage to Plaintiffs and to the goodwill associated with the CALIBRE NORTEÑO and CALIBRE NORTEÑO and Design marks.

85. Plaintiffs have no adequate remedy at law.

## COUNT V - ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

86. Plaintiffs adopt and reallege paragraphs 1 through 85.

87. The violation of the Illinois Uniform Deceptive Trade Practices Act described in Count IV also constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2.

88. Defendants' conduct is intentional, willful and outrageous, in that it was done with deliberate disregard or reckless indifference to the rights of Plaintiffs.

89. Defendants' actions are likely to and did injure Plaintiffs. Those actions have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury and damage to Plaintiffs and to the goodwill associated with the CALIBRE NORTEÑO and CALIBRE NORTEÑO and Design marks.

90. Plaintiffs have no adequate remedy at law.

## COUNT VI – TRADEMARK CANCELLATION

91. Plaintiffs adopt and reallege paragraphs 1 through 90.

92. Plaintiffs have used the CALIBRE NORTEÑO and CALIBRE NORTEÑO and Design marks in connection with their musical performances and recorded music since long before Defendants began using, or Castañeda applied to register, the ARRIBA CALIBRE 50 PARIENTES and Design mark which is the subject of U.S. Service Mark Registration No. 4,181,808.

93. The ARRIBA CALIBRE 50 PARIENTES and Design mark which is the subject of U.S. Service Mark Registration No. 4,181,808 so resembles Plaintiffs' CALIBRE NORTEÑO

and CALIBRE NORTEÑO and Design marks that it is likely to cause confusion, mistake or deception within the meaning of 15 U.S.C. § 1052(d).

94. Plaintiffs have been, are, and will continue to be damaged by the continuing registration of the mark covered by U.S. Service Mark Registration No. 4,181,808.

95. Cancellation of U.S. Service Mark Registration No. 4,181,808, pursuant to 15 U.S.C. § 1119, is necessary to prevent future damages to Plaintiffs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Ramon Villalobos and Alberto Valencia, respectfully request this Court to enter:

1. Judgment for Plaintiffs and against Defendants on Count I for trademark infringement under 15 U.S.C. § 1114(a).

2. Judgment for Plaintiffs and against Defendants on Count II for unfair competition in violation of 15 U.S.C. § 1125(a).

3. Judgment for Plaintiffs and against Defendants on Count III for unfair competition under the common law.

4. Judgment for Plaintiffs and against Defendants on Count IV for violation of the Illinois Uniform Deceptive Trade Practices Act.

5. Judgment for Plaintiffs and against Defendants on Count V for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

6. Judgment for Plaintiffs and against Castañeda for cancellation of U.S. Service Mark Registration No. 4,181,808, pursuant to 15 U.S.C. § 1119.

7. A preliminary and permanent injunction restraining Defendants, and their heirs, administrators, officers, directors, agents, servants, representatives, employees, parents, subsidiaries, related companies, licensees, successors, assigns, assignees and all persons acting in active concert or participation with Defendants, or on behalf of Defendants, from doing, causing, aiding or abetting any of the following:

    a. engaging in any acts or activities directly or indirectly calculated to trade upon the reputation or goodwill of Plaintiffs or the CALIBRE NORTEÑO and CALIBRE NORTEÑO and Design marks, or to unfairly compete with Plaintiffs in any manner;

    b. directly or indirectly infringing the CALIBRE NORTEÑO and CALIBRE NORTEÑO and Design marks;

    c. using in the sale, offering for sale, promotion, advertising, and marketing of goods or services or in any advertising, catalogs, letterhead, business cards, promotional items, promotional material, on any web site or other materials in any media whatsoever the mark CALIBRE 50 or ARRIBA CALIBRE 50 PARIENTES and Design, or any mark incorporating "Calibre" in such manner so as to cause confusion, or be likely to cause confusion, mistake or deceive Plaintiffs' customers and the public into the belief that the goods or services offered by Defendants are approved by, sponsored by, or otherwise associated or connected with Plaintiffs;

    d. otherwise engaging in any other acts or conduct that would cause consumers to believe erroneously that Defendants' goods or services are

somehow sponsored by, authorized by, licensed by, approved by, or in any other way are associated with Plaintiffs.

8. An order pursuant to 15 U.S.C. § 1119 cancelling Castañeda's U.S. Service Mark Registration No. 4,181,808.

9. An order requiring Castañeda to abandon U.S. Trademark Applications Serial No. 85/018,463 for the mark CALIBRE 50, and Serial No. 85/591,999 for the mark ARRIBA CALIBRE 50 PARIENTES and Design.

10. An order requiring Defendants to account to and pay over to Plaintiffs all gains, profits and advantages derived from Defendants' trademark infringement, unfair competition and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

11. An order requiring Defendants to account to and pay over to Plaintiffs all damages suffered by Plaintiffs as a result of Defendants' service mark infringement, unfair competition and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

12. An order trebling the amount of the award to Plaintiffs, pursuant to 15 U.S.C. § 1117(a).

13. An order directing Defendants to pay to Plaintiffs punitive damages under the Illinois Consumer Fraud and Deceptive Business Practices Act due to the intentional, willful and outrageous nature of Defendants' actions.

14. An order requiring Defendants to pay Plaintiffs' reasonable attorneys fees, expenses, and costs incurred in this action.

15. An order granting such other relief as this Court may deem just.

**Demand for Jury Trial**

Pursuant to Fed. R. Civ. Pro. 38(b), Plaintiffs demand a trial by jury on all issues in this action so triable.

                                            Respectfully submitted,

                                            RAMON VILLALOBOS and ALBERTO VALENCIA

Date: October 12, 2012                By: s/ Mark R. Bagley
                                                  Mark R. Bagley
                                                  Brett M. Tolpin
                                                  TOLPIN & PARTNERS, PC
                                                  11 South LaSalle Street, Suite 2900
                                                  Chicago, Illinois 60603
                                                  (312) 698-8971

                                                  Hazel Espinar
                                                  ESPINAR & ASSOCIATES, PC
                                                  35 East Wacker Drive, 9th Floor
                                                  Chicago, Illinois 60601
                                                  (312) 578-0907

                                                  Attorneys for Plaintiffs RAMON VILLALOBOS and ALBERTO VALENCIA