# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **RAMON VILLALOBOS and** | ) | |
| **ALBERTO VALENCIA,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 12 C 8218** |
| **v.** | ) | |
| | ) | **Judge Joan H. Lefkow** |
| **JESUS TIRADO CASTAÑEDA, EDEN** | ) | |
| **MUÑOZ, ARMANDO RAMOS,** | ) | |
| **MARTIN LOPEZ, MARTIN AUGUSTO** | ) | |
| **GUIDO, and UMG RECORDINGS, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Ramon Villalobos and Alberto Valencia[1] (together, "plaintiffs") filed a six-count

complaint alleging federal claims for trademark infringement and unfair competition in violation

of Sections 32(a) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*., and Illinois state law

causes of action for unfair competition, violation of the Illinois Uniform Deceptive Trade

Practices Act, 815 Ill. Comp. Stat. 510/2 *et seq*., and violation of the Illinois Consumer Fraud

---

[1] Plaintiffs' response to the motion reports that Valencia died on or about June 5, 2013 and that no probate estate has been opened. As an estate had not yet been opened as of the filing of plaintiffs' response, the court will not dismiss Valencia as a party from this law suit. For convenience, this opinion refers to Mr. Valencia as if he were still living.

If Valencia's estate or other nonparty intends to proceed on behalf of Valencia, a timely motion for substitution must be made. *See* Fed. R. Civ. P. 25(a). In support of such a motion, they must obtain from the appropriate probate court an order of appointment of a special representative for the purpose of this litigation. *See* 735 Ill. Comp. Stat. 5/2-1008(b); *see also Wilson* v. *Sundstrand Corp.*, No. 99 D 6944, 99 C 6946, 2002 WL 99745, at *4 (N.D. Ill. Jan. 25, 2002) ("A federal court lacks the authority to appoint a special administrator."); Coleman v. *McLaren*, 590 F. Supp. 38, 39 (N.D. Ill. 1984) (same and construing the term "court" in 735 Ill. Comp. Stat. 5/2-1008(b) referenced above to refer to an "Illinois state court").

and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2 *et seq*., against Jesus Tirado

Castañeda, Eden Muñoz, Armando Ramos, Martin Lopez, Martin Augusto Guido ("the

individual defendants"), and UMG Recordings, Inc. ("UMG").[2]  Presently before the court are

Ramos's motion[3] to dismiss for improper service of process pursuant to Federal Rule of Civil

Procedure 12(b)(5), the individual defendants' motions to dismiss for lack of personal

jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), and defendants' motion to

transfer venue to the United States District Court for the Central District of California pursuant

to 28 U.S.C. § 1404 [Dkt. 18].  For the reasons that follow, the motion to dismiss for improper

service of process is granted without prejudice, the motion to dismiss for lack of personal

jurisdiction is denied, and the motion to transfer the case to the Central District of California is

granted.

---

[2] The court has subject matter jurisdiction over the federal claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331, and the court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

[3] After challenging improper service in the initial briefing, Casteñeda concedes that Villalobos and Valencia properly effectuated service on him and thus withdraws this argument with respect to himself.

# BACKGROUND[4]

## I.     Calibre Norteño

Villalobos is the founder and Valencia was the manager of Calibre Norteño, a musical group formed in 1999 that performed throughout the United States (specifically including the Northern District of Illinois) and in Mexico.  Villalobos and Valencia reside in the Northern District of Illinois. Valencia had been the manager of Calibre Norteño since 2005 and promoter since 2010.  Specifically, "calibre" is a Spanish words that means "caliber."  "Norteño" is a genre of Mexican music that is popular both in the United States and Mexico.  The English translation of "Calibre Norteño" is "Northern Caliber."

In 2000, Calibre Norteño made its first public performance in Illinois.  In 2001, Calibre Norteño began touring nationally and, between 2001 and 2009, it performed in California, Texas, Colorado, Idaho, Nebraska, Georgia, and Florida.  In 2002, 2003, and 2006, Calibre Norteño toured in Mexico.  In 2007, Villalobos registered the Calibre Norteño logo as a design mark for live performances by a musical band, which issued as Registration Number 3,344,730.  He did not register any other trademarks in connection with Calibre Norteño aside from the logo. Calibre Norteño released eight albums and its most recent album, Si REGRESAS, was released in 2012.  Since its inception, Calibre Norteño has garnered a significant following among fans of Latin and Mexican-American music throughout the United States.

## II.     Calibre 50

---

[4]  The following facts are taken from the complaint and are presumed true for the purpose of resolving the pending motion.  *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002).  In addition, the court can consider declarations outside of the pleadings submitted by defendants challenging personal jurisdiction, *see Purdue Research Found.* v. *Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003), service of process, *see Dumas* v. *Decker*, No. 10 C 7684, 2012 WL 1755674, at *2 (N.D. Ill. May 16, 2012), and venue.  *See Auto. Mechs. Local 701 Welfare & Pension Funds* v. *Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007); *Signode* v. *Sigma Techs. Int'l, LLC*, No. 09 C 7860, 2010 WL 1251448, at *2 (N.D. Ill. Mar. 24, 2010).

Muñoz, Ramos, Lopez, and Guido are members of a band called Calibre 50. All of these individual defendants ("the band members") reside in Mexico. Castañeda formed Calibre 50 and serves as its manager. In this role, Castañeda controls Calibre 50's business activities, which include scheduling performances and promoting the band. The band members are not involved in scheduling or promoting live performances. In addition to Calibre Norteño and Calibre 50, there are numerous other Spanish-language music artists who incorporate the word "Calibre" into their band name.[5] For example, Calibre Pesado is a Mexican regional band based in Kansas. On April 20, 2010, Castañeda filed U.S. Trademark Application Serial No. 85/018,463 for the mark Calibre 50 with respect to "audio and video recordings featuring music and artistic performances" including "entertainment, namely, live performances by a musical band." (Dkt. 56–1, PageID 255.)[6]

UMG, through its subsidiary, Universal Music Latin Entertainment ("UMLE"), a Delaware corporation with its principal place of business in Santa Monica, California, markets, promotes, and distributes Calibre 50's album nationwide. Castañeda met with UMLE in Santa Monica and Woodland Hills, California to discuss marketing and promotions for Calibre 50. On December 7, 2010, Calibre 50 released a music album titled, "RENOVAR O MORIR" ("Renew or Die"). Disa Records label ("Disa"), which is owned by UMG, released the album and promoted and sold it throughout the United States. On March 22, 2011, Calibre 50 released another album,

---

[5] The court's internet search came up with artists named Calibre 50, Calibre, Calibre 38, Calibre and Zero Tolerance, Calibre Zero, Calibre Cuts, Calibre 45, and more. *See* AllMusic, http://www.allmusic.com/search/artists/calibre (last visited Sept. 27, 2013). One that did not pop up was Calibre Norteño.

[6] Castañeda also filed a trademark application on April 28, 2011 and April 4, 2012 for a mark titled "Arriba Calibre 50 Parientes." On July 31, 2012, Castañeda received a registered service mark from the United States Patent and Trademark Office for "Arriba Calibre 50 Parientes."

4

"De Sinaloa Para El Mundo" ("From Sinaloa to the World"), which was released by Disa and promoted and sold throughout the United States. On January 17, 2012, Calibre 50 released an album titled, "Mujer de Todo, Mujer de Nadie" ("Woman of All, Woman of No One"), which was released by Disa and promoted and sold throughout the United States. On February 28, 2012, Calibre 50 released an album titled, "El Buen Ejemplo" ("The Good Example"), which was released by Disa and promoted and sold throughout the United States. Castañeda travels from his home in Mexico to attend meetings in Santa Monica or Woodland Hills relating to the marketing and promotion of Calibre 50.

### III. Calibre 50's Performances in Illinois

In July 2012, Calibre 50 played three live music performances on consecutive nights in and around Chicago, Illinois. Calibre 50 promoted and advertised these shows in the Chicago area. On July 13, 2012, Valencia had his attorney send a cease and desist letter to an attorney representing defendants. The letter informed defendants' attorney that Valencia had owned the Calibre Norteño design mark for live performances by a musical band since 2007. The letter asserted that defendants were allegedly infringing that mark through the use of the term Calibre in their band name. The letter requested that defendants' attorney respond by July 20, 2012.

Valencia and Villalobos also submitted affidavits in response to defendants' motion to dismiss averring that they had seen written advertisements, television and radio advertisements, compact discs, Internet YouTube video postings, and posters promoting Calibre 50 in Illinois. They further stated that he had seen and heard television and radio advertisements for Calibre 50 and that Calibre 50 performed in Illinois in 2013 after this law suit was filed. They attached printouts from Yahoo that returned "hits" for the search term "Calibre 50." Among the hits

returned by Yahoo included hyperlinks to YouTube postings of Calibre 50's performances and other pages advertising Calibre 50 performances in the Chicago area in 2013. Villalobos's declaration also stated that he is of limited financial resources and his sole source of income comes from his employment in Illinois. He further stated that Valencia had provided financial support for the present law suit (and that his estate may be unable to contribute future to litigation expenses for this case).

The band members submitted declarations stating that, prior to the filing of this law suit, none of them had heard of Calibre Norteño. They additionally stated that traveling to Chicago in connection with this matter would be burdensome. Castañeda also submitted a declaration stating that he was not aware of Calibre Norteño before he chose the Calibre 50 name. Castañeda learned of Calibre Norteño while he was in Monterrey, Mexico, sometime in 2010 after receiving a phone call from one of the plaintiffs. At that time, Castañeda was unaware that Calibre Norteño had any connection with Illinois. Castañeda believed that both bands had the right to use the word "Calibre" in their name as it was a commonly used word in the names of Mexican bands. Plaintiffs filed this law suit in October 2012 alleging that defendants' use of the Calibre 50 mark infringes their rights in the Calibre Norteño design mark and request damages and injunctive relief.

## LEGAL STANDARD

Rule 4(m) requires defendants to be served within 120 days of the filing of a complaint. Fed. R. Civ. P. 4(m). "[V]alid service of process is necessary to assert personal jurisdiction over a defendant." *Mid-Continent Wood Prods., Inc.* v. *Harris*, 936 F.2d 297, 301 (7th Cir. 1991). If service is not timely effectuated, Rule 12(b)(5) provides that a defendant may seek dismissal of a complaint based on insufficient service. Fed. R. Civ. P. 12(b)(5). The plaintiff has the burden of demonstrating that the court has jurisdiction over a defendant through effective service. *See Cardenas* v. *City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011).

Rule 12(b)(2) permits dismissal of a claim based on lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). The burden of proof on jurisdictional challenges is on the party asserting jurisdiction. *United Phosphorous, Ltd.* v. *Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003); *RAR, Inc.* v. *Turner*, 107 F.3d 1272, 1276 (7th Cir. 1997). In considering a motion to dismiss for lack of personal jurisdiction, the court may review affidavits submitted by the parties. *Purdue Research Found.* v. *Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When the court rules on the motion without a hearing, however, the plaintiff need only establish a "*prima facie* case of personal jurisdiction." *Id*. at 782 (quoting *Hyatt Int'l Corp.* v. *Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). The court will "read the complaint liberally, in its entirety, and with every inference drawn in favor of" the plaintiff. *Central States, Se. & Sw. Areas Pension Fund* v. *Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (quoting *Textor* v. *Bd. of Regents of N. Ill. Univ.*, 711 F.3d 1387, 1393 (7th Cir. 1993)). Disputes concerning relevant facts are resolved in favor of the plaintiff. *Purdue Research Found.*, 338 F.3d at 782 (citing *Nelson* v. *Park Indus.*, 717 F.2d 1120, 1123 (7th Cir. 1983)).

# ANALYSIS

## I.     Improper Service

Plaintiffs filed this law suit on October 12, 2012 and have served all defendants except Ramos.  Although Ramos is aware of this law suit, plaintiffs provide no excuse for the delay in effectuating service, which is approaching the one-year mark.  *See, e.g.*, *Robinson Eng'g Co. Pension Plan & Trust* v. *George*, 223 F.3d 445, 453–54 (7th Cir. 2000) ("'Notice to a defendant that he has been sued does not cure defective service, and an appearance for the limited purpose of objecting to service does not waive the technicalities of the rule governing service." (quoting *Grand Entm't Grp. Ltd.* v. *Star Media Sales, Inc.*, 988 F.2d 476, 492 (3d Cir. 1993)); *Mid-Continent Woods Prods., Inc.*, 936 F.2d at 301 ("[I]t is well recognized that a defendant's actual notice of the litigation . . . is insufficient to satisfy Rule 4's requirements." (internal quotation marks omitted)).  Under Federal Rule of Civil Procedure Rule 4(m), "on motion . . . the court must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).  Inasmuch as this case will be transferred and because plaintiffs have not shown good cause for failure to effect service, the case will be dismissed without prejudice as to Ramos.

## II.    Personal Jurisdiction

In a federal question case, the court "has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant."  *See Mobile Anesthesiologists Chicago, LLC* v. *Anesthesia Assoc. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010); *see also Merrill Lynch Bus. Fin. Servs., Inc.* v. *Marais*, No. 94 C 3316, 1995 WL 608573, at *3 (N.D. Ill. Oct. 12, 1995) ("Though

personal jurisdiction and service of process are distinguishable, they are closely related since service of process is the vehicle by which the court may obtain jurisdiction." (internal quotation marks omitted)). Federal Rule of Civil Procedure 4(k)(1) permits nationwide service of process when authorized by a federal statute or if the defendant is subject to personal jurisdiction in the state where the district court sits. *See* Fed. R. Civ. P. 4(k)(1)(A) & (C).

If a defendant is amenable to personal jurisdiction in the United States, which the individual defendants do not contest, the question becomes whether the applicable federal statute permits nationwide service of process. *See Primack* v. *Pearl B. Polto, Inc.*, 649 F. Supp. 2d 884, 887 (N.D. Ill. 2009). The Lanham Act does not, *see be2 LLC* v. *Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011), so the court must look to whether jurisdiction is proper under both Illinois law and the United States Constitution. *See* Fed. R. Civ. P. 4(k)(1)(A) & (C); 735 Ill. Comp. Stat. 5/2-209(d) (the Illinois long-arm statute provides that "[s]ervice of process upon any person who is subject to the jurisdiction of the courts of this State . . . may be made by personally serving the summons upon the defendant outside this State."). Illinois allows for personal jurisdiction to the extent authorized by the due process clause of the Fourteenth Amendment, which merges the federal constitutional and state statutory inquiries together. *Tamburo* v. *Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); 735 Ill. Comp. Stat. 5/2-209(c). Under the Illinois long-arm statute, personal jurisdiction can be general or specific. *uBid, Inc.* v. *GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010).

### A. General Jurisdiction

General jurisdiction is a demanding standard in which a defendant can be haled into an Illinois court if they have "'continuous and systematic general business contacts' with the forum

state." *uBid*, 623 F.3d at 425–26 (quoting *Helicopteros Nacionales de Colombia, S.A.* v. *Hall*, 466 U.S. 408, 415–16, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)).  In determining whether general jurisdiction exists, court look to the following factors: "(1) whether defendants maintain offices or employees in Illinois; (2) whether defendants send agents into Illinois to conduct business; (3) whether defendants have designated an agent for service of process in Illinois; (4) whether defendants advertise or solicit business in Illinois; and (5) the extent to which defendants conduct business in Illinois."  *Richter* v. *INSTAR Enterp. Int'l, Inc.*, 594 F. Supp. 2d 1000, 1006 (N.D. Ill. 2009).

It is undisputed that the individual defendants have no offices or employees in Illinois, have never sent agents to Illinois to conduct business, and have no designated agent for service of process in Illinois.  Rather, the individual defendants' contacts with Illinois are limited to playing three performances in the Chicago area in July 2012.  The fleeting nature of those performances, however, are too attenuated to exercise personal jurisdiction under a general jurisdiction theory.  *See, e.g.*, *Purdue Research Found.*, 338 F.3d at 787 (contacts for general jurisdiction "must be so extensive to be tantamount to [the defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in [a court in the forum state] in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world.").  Accordingly, plaintiffs must demonstrate that their claims arise out of the individual defendants' specific contacts with Illinois.  *See Hyatt Int'l Corp.*, 302 F.3d at 713 ("But as [the plaintiff] has not asserted that Illinois can exercise general jurisdiction over the defendants, we consider only the propriety of specific jurisdiction, a more limited assertion

10

of state power, in which personal jurisdiction exists for controversies that arise out of or are related to the defendant's forum contacts.").

### B. Specific Jurisdiction

Specific jurisdiction grows out of a defendant's particular contacts with the state and is present when "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo*, 601 F.3d at 702; *see Mobile Anesthesiologists*, 623 F.3d at 444. The exercise of specific jurisdiction must also comport with the traditional notions of fair play and substantial justice, *see Felland* v. *Clifton*, 682 F.3d 665, 673 (7th Cir. 2012), taking into account "the burden on the defendant, the forum State's interest in adjudicating the dispute, [and] the plaintiff's interest in obtaining relief." *Burger King Corp.* v. *Rudzewicz,* 471 U.S. 462, 477, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (internal quotation marks omitted). "Each defendant's contact with the forum State must be assessed individually." *Keeton* v. *Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984).

Plaintiffs argue that the individual defendants' three musical performances in Illinois, in addition to Castañeda's nationwide marketing, promotions, pamphlets circulating the dates and times of the shows , and posting of videos online of their performances make them amenable to personal jurisdiction in Illinois because these activities demonstrate that they purposefully availed themselves of the privilege of conducting business in Illinois.[7] They also allege that defendants committed intentional tortious acts in Illinois. The individual defendants rely on the

---

[7] Valencia and Villalobos never requested jurisdictional discovery.

effects test set out in *Calder* v. *Jones*, 465 U.S. 783, 789, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984), which requires that courts determine specific jurisdiction by considering whether the defendant engaged in (1) intentional conduct (or intentional and allegedly tortious conduct); (2) expressly aimed at the forum state; (3) with the knowledge that such conduct would injure the plaintiffs in the forum state. *Tamburo*, 601 F.3d at 703 (citing *Calder*, 465 U.S. at 789).

The individual defendants further argue that they did not engage in intentional conduct. Namely, the band members argue that they were unaware that Calibre Norteño existed before this law suit was filed; they did not know that there was a registered trademark associated with Calibre Norteño; and they had no knowledge that Calibre Norteño primarily operated out of Illinois. Castañeda argues that, although he became aware of Calibre Norteño and its trademark in 2010, it was after he had registered the mark associated with Calibre 50. Castañeda states that other musical groups in the United States employ the term "Calibre," which is a common Spanish word. Indeed, a band in Kansas, Calibre Pesado, had a similar name. Because of the widespread use of the term "Calibre," Castañeda believed that his band's incorporation of the term in its name was not infringing.[8]

---

[8] Plaintiffs also argue that Calibre 50 played shows and advertised in Illinois in 2013 *after* the filing of the present law suit. Personal jurisdiction, however, is determined at the time of the filing of the complaint and any contact that the defendants had with Illinois after that time cannot give rise to a basis of personal jurisdiction. *See Central States, Se. & sw. Areas Pension Fund* v. *Phencorp Reinsurance Co.*, 440 F.3d 870, 877–78 (7th Cir. 2006); *Wild* v. *Subscription Plus, Inc.*, 292 F.3d 526, 528 (7th Cir. 2002) ("[J]urisdiction is normally determined as of the date of the filing of the suit."); *United Phosphorus, Ltd.* v. *Angus Chemical Co.*, 43 F. Supp. 2d 904, 910 (N.D. Ill. 1999) ("While pre-suit activities may rise to the level of a 'fair warning' that a defendant may be haled into a court in the forum state, post-suit activities cannot serve to warn the defendant of an event that has already occurred."). Moreover, plaintiffs rely on hearsay—a search conducted on Yahoo returning "hits" for Calibre 50—to support their argument that Calibre 50 continued performing in Illinois in 2013. *See United States* v. *Jackson*, 208 F.3d 633, 637 (7th Cir. 2000) ("[A]ny evidence procured off the internet is adequate for almost nothing, even under the most liberal interpretations of the hearsay exception rules." (internal quotation marks omitted)); *see also Spuglio* v. *Cabaret Lounge*, 344 F. App'x 724, 726 (3d Cir. 2009) ("To exercise personal jurisdiction over the Defendant on the basis of the information found on a Google search would

The individual defendants' activities in Illinois–playing three concerts using the name Calibre 50 and promoting the band and those concerts–demonstrate that they purposefully availed themselves of the privilege of conducting business in Illinois. The present law suit stems from the band members' allegedly tortious conduct, the use and Castañeda's promotion of the name Calibre 50 in connection with the July 2012 performances. *See, e.g.*, *Mercantile Cap. Partners* v. *Agenzia Sports, Inc.*, No. 04 C 5571, 2005 WL 351926, at *2 (N.D. Ill. Feb. 10, 2005) ("[A] single tortious act occurring in Illinois will establish jurisdiction in Illinois even though the defendant has no other contact in Illinois and has never been to Illinois." (internal quotation marks omitted)); *Int'l Star Registry of Ill.* v. *Bowman-Haight Ventures, Inc.*, No. 98 C 6823, 1999 WL 300285, at *7 (N.D. Ill. May 6, 1999) ("Granted defendant's contacts were minimal, however, it is the quality of contacts, not their number that determined whether they amount to purposeful availment for jurisdiction purposes."). These Illinois contacts make specific personal jurisdiction appropriate over the individual defendants. *See, e.g., Wise* v. *Williams*, No. 1-10-CV-02094, 2011 WL 2446303, at *5 (M.D. Pa. May 18, 2011) (personal jurisdiction appropriate in copyright infringement suit over individual members of a band finding that "the band traveled to Pennsylvania for live concerts, and all defendants engaged in other types of advertising and promotional activities, making it reasonably foreseeable that they could be subject to suit here for claims arising out of or related to the song.").[9]

---

not comport with fair play and substantial justice." (internal quotation marks omitted)).

[9] Moreover, the "effects test" espoused by *Calder* would also satisfy due process concerns in exercising personal jurisdiction over Castañeda. Castañeda argues that, although he was aware of Calibre Norteño and its trademark in 2010, he believed that his band's incorporation of the term "Calibre" in its name was not infringing, as other bands in the United States use the common Spanish word "Calibre" in their names. Still, in July 2012, Castañeda's attorney received a cease-and-desist letter from plaintiffs' attorney and was aware that plaintiffs believed that the use of the name Calibre 50 and the Calibre 50 logo

Having found sufficient minimum contacts, the court must next consider traditional notions of fair play and substantial justice in determining whether jurisdiction is appropriate. *See Asahi Metal Indus. Co.* v. *Superior Court of Cal.*, 480 U.S. 102, 113, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987). In conducting this analysis, the court looks to the following factors: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in efficiently resolving controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *See uBID, Inc.*, 623 F.3d at 432.

These factors do not overwhelmingly weigh in favor of finding personal jurisdiction over the individual defendants. Namely, the burden on the individual defendants is great as they are all residents of Mexico and have no connection with Illinois other than their performances in the state. Plaintiffs, however, are Illinois residents and their injuries stem from the individual defendants' Illinois performances. In addition, Illinois has an interest in adjudicating the present dispute as it concerns allegations of trademark infringement, unfair competition, consumer fraud, and deceptive practices with regard to the individual defendants' actions in this state. Fairness

---

constituted trademark infringement. Additionally, as of July 2012, Castañeda was on notice that Calibre Norteño operated out of Illinois. These facts demonstrate that Castañeda had knowledge that Calibre 50's July 2012 performances could damage the goodwill associated with Calibre Norteño in Illinois. *See Blue Cross & Blue Shield Ass'n* v. *UHS of Del. Inc.*, 09 C 7935, 2010 WL 2732349, at *3 (N.D. Ill. July 9, 2010) (finding specific personal jurisdiction where the defendants "were aware of their potential infringement of trademarks owned by an Illinois corporation, and therefore were aware that they could potentially be held liable for harm caused to [the plaintiff] by that infringement."); *Brunswick Bowling & Billiards Corp.* v. *Pool Tables Plus, Inc.*, No. 04 C 7624, 2005 WL 396304, at *3 (N.D. Ill. Feb. 16, 2005) (finding personal jurisdiction appropriate because, *inter alia*, the defendant continued its tortious conduct after receiving a cease-and-desist letter); *compare with Primack*, 649 F. Supp. 2d at 890–91 (out-of-state defendant only visited Illinois once before the plaintiff registered its trademark and made no sales of her book incorporating the allegedly infringing mark during her visit); *Novelty, Inc.* v. *RCB Distributing, Inc.*, No. 1:08-cv-0418, 2008 WL 2705532, at **3–4 (S.D. Ind. July 9, 2008) (Texas distributor had no knowledge that its out-of-state purchase and sale of allegedly infringing merchandise would harm an Indiana resident).

thus does not militate against finding personal jurisdiction.[10]  Accordingly, the individual

defendants' motion to dismiss for lack of personal jurisdiction is denied.

### III.    Change of Venue

The court, in its discretion, may transfer a case "[f]or the convenience of parties and

witnesses, [and] in the interest of justice . . . to any other district or division where it might have

been brought."  28 U.S.C. § 1404(a).  To transfer a case under section 1404(a), the party

requesting the transfer must show that "(1) venue is proper in the transferor district; (2) venue

and jurisdiction are proper in the transferee district; and (3) the transfer will serve the

convenience of the parties and the witnesses and will promote the interest of justice."  *Ritchie*

*Capital Mgmt., LLC* v. *Jeffries*, No. 09 C 7228, 2010 WL 768877, at *2 (N.D. Ill. Mar. 4, 2010)

(quoting *Amoco Oil Co.* v. *Mobil Oil Corp.*, 90 F. Supp. 2d 958, 959 (N.D. Ill. 2000)).  "The

party challenging venue using § 1404(a) has the burden of demonstrating that the requested

venue is more convenient for the parties and that the transfer would serve the interest of justice."

*Id.* (citing *Coffey* v. *Van Dorn Iron Works*, 796 F.2d 217, 219–20 n.3 (7th Cir. 1986)).  "Transfer

is inappropriate if it merely transforms an inconvenience for one party into an inconvenience for

the other party."  *See Brandon Apparel Grp., Inc.* v. *Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 834

(N.D. Ill. 1999) (internal quotation marks omitted).  The court retains discretion to determine the

amount of weight to give each factor in deciding whether transfer is appropriate.  *See Habitat*

*Wallpaper & Blinds, Inc.* v. *K.T. Scott Ltd.*, 807 F. Supp. 470, 474 (N.D. Ill. 1992).

---

[10]  The court has other means of accommodating the individual defendants' concerns about litigating this case in Illinois detailed *supra* in section III.  *See Hemi Grp.*, 622 F.3d at 760 ("[T]hese factors rarely will justify a determination against personal jurisdiction because there are other mechanisms available to the court—such as choice of law and transfer of venue—to accommodate the various interests at play." (internal quotation marks omitted)).

Venue is appropriate in a judicial district where (1) any defendant resides if all defendants are residents of the state in which the district is located; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b). Venue is appropriate in the Northern District of Illinois and the Central District of California as a substantial part of the events giving rise to the claims occurred in both districts. *See* 28 U.S.C. § 1391(b)(2); *see also Caldera Pharms., Inc.* v. *Los Alamos Nat'l Sec., LLC*, 844 F. Supp. 2d 926, 929 (N.D. Ill. 2012) ("For venue to be proper under § 1391(b)(2), a majority of the events giving rise to the claim need not occur in the venue, only a substantial part." (internal quotation marks omitted)).

### A.    Convenience of the Parties and Witnesses

The court considers five factors when addressing the convenience of the parties: "'(1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses.'" *Ritchie*, 2010 WL 768877, at *3 (quoting *Amoco*, 90 F. Supp. 2d at 960).

First, "[a] plaintiff's choice of forum is entitled to substantial deference, particularly where the chosen forum is the plaintiff's home forum." *Brandon Apparel Grp., Inc.*, 42 F. Supp. 2d at 833; *see also United Air Lines, Inc.* v. *Mesa Airlines, Inc.*, 8 F. Supp. 2d 796, 798 (N.D. Ill. 1998) ("[T]he balance must weigh strongly in the defendant's favor before a plaintiff's choice of forum will be disturbed."). At the same time, a "plaintiff's choice of forum has reduced value where the forum lacks any significant contact with the underlying cause of action." *Hotel Constructors, Inc.* v. *Seagrave Corp.*, 543 F. Supp. 1048, 1050 (N.D. Ill. 1982); *Childress* v.

16

*Ford Motor Co.*, No. 03 C 3656, 2003 WL 23518380, at *3 (N.D. Ill. Dec. 17, 2003) ("This deference is further minimized where the plaintiff's choice of forum is not the site of material events." (internal quotation marks omitted)). Although Calibre 50 performed three shows in Illinois, the crux of the instant claims center around UMG's promoting Calibre 50 nationwide; all of these activities took place in California. Accordingly, plaintiffs' choice of forum in the Northern District of Illinois does not preclude transfer.

Applying the second factor, the court looks to the situs of the material events. "Courts assessing whether to transfer intellectual property cases like this one often focus on the activities of the alleged infringer, its employees, and its documents; therefore, the location of the infringer's place of business is often the critical and controlling consideration." *S.C. Johnson & Son, Inc.* v. *Buzz Off Shield, LLC*, No. 05 C 1046, 2005 WL 1838512, at *2 (N.D. Ill. July 28, 2005) (internal quotation marks omitted). UMG is headquartered in the Central District of California and it distributed and marketed the Calibre 50 brand nationwide out of that location. Castañeda, who lives in Mexico, travels to California and meets with UMG personnel at its headquarters concerning its promotion efforts for Calibre 50. Over the past three years, UMG, through its subsidiary Disa, has released and marketed four Calibre 50 albums. These activities—the marketing and promotion of Calibre 50—substantiate the material events giving rise to plaintiffs' claims. *See Confederation des Brasseries de Belgique* v. *Coors Brewing Co.*, No. 99 C 7526, 2000 WL 88847, at *3 (N.D. Ill. Jan. 20, 2000) ("In cases involving copyright and unfair competition claims, the material activities central to the claims occur where the allegedly infringing products are designed, manufactured and marketed.").

Plaintiffs also argue that material events occurred in Illinois, focusing on the three performances played by Calibre 50 in July 2012. These performances, they argue, evidence that they suffered harm in Illinois. Still, the events occurring in Illinois are minimal compared to the distribution efforts that UMG and Castañeda undertake in California. As both parties acknowledge, Calibre 50 plays performances nationwide and with the release of their recent albums, have a national reach. In addition, plaintiffs' injury—the alleged confusion and competition between Calibre 50 and Calibre Norteño—is not isolated to Illinois and is indeed felt nationwide as both bands have a presence that spans several states and into Mexico. *See H.B. Sherman Mfg. Co.* v. *Rain Bird Nat'l Sales Corp.*, 979 F. Supp. 627, 630 (N.D. Ill. 1997) ("Although the actual injury in a trademark infringement case occurs where the consumer is misled, here, the parties sell their products in similar markets nationwide." (internal citation omitted)). Thus, the situs of material events remains in California even though plaintiffs allege injury from Calibre 50 playing three performances in Illinois. *See Jewel Am., Inc.* v. *Combine, Int'l Inc.*, No. 07 C 3596, 2007 WL 4300589, at *3 (N.D. Ill. Nov. 30, 2007) ("In this case, the alleged infringers are both located in Michigan, the accused products were designed and manufactured either in Michigan or overseas, and all of the meetings between the defendants regarding the design, manufacture, purchase and sale of the accused products took place in Michigan. Michigan is, therefore, the situs of the material events underlying this suit." (internal citation omitted)).

The third convenience factor is the ease of access to sources of proof. "In this day and age, transferring documents from one district to another is commonplace and, given the widespread use of digital imaging in big-case litigation, no more costly than transferring them

across town." *Rabbit Tanaka Corp. USA* v. *Paradies Shops, Inc.*, 598 F. Supp. 2d 836, 840 (N.D. Ill. 2009). Neither side disputes that the sources of proof are not as accessible in the Northern District of Illinois as they would be in the Central District of California. Because UMG's documents will constitute the bulk of the evidence in this case, that it is headquartered in the Central District of California slightly weighs in favor of transfer. *See, e.g.*, *Pinpoint, Inc.* v. *Groupon, Inc.*, No 11 C 5597, 2011 WL 6097738, at *3 (N.D. Ill. Dec. 5, 2011). Still, in today's age of electronic discovery, this prong is afforded little weight. *See Digan* v. *Euro-Am. Brands, LLC*, No. 10 C 799, 2010 WL 3385476, at *5 (N.D. Ill. Aug. 19, 2010) ("documents now are easily scanned, stored, and electronically transmitted . . . [and] moving them no longer creates the onerous burden it may once have imposed").

The fourth factor looks to the convenience of the witnesses and parties. "The convenience of witnesses is often viewed as the most important factor in the transfer balance." *Rose* v. *Franchetti*, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989). In evaluating this factor, the court considers the number of witnesses located in each forum and the nature and importance of their testimony. *Rohde* v. *Cent. R.R. of Ind.*, 951 F. Supp. 746, 748 (N.D. Ill. 1997). Here, the parties have not identified any non-party witnesses who are expected to testify. UMG notes that its employees may be witnesses; however, UMG's employees would normally have to appear voluntarily and their presence in California does not militate in favor of transfer. *See Amorose* v. *C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 736 (N.D. Ill. 2007) ("The convenience of

party witnesses is less relevant than the convenience of non-party witnesses, since party witnesses normally must appear voluntarily.").[11]

Moreover, in determining the convenience of the parties, the court should look to "the parties' respective residence and their ability to bear the expenses of litigating in a particular forum." *Body Science LLC* v. *Boston Scientific Corp.*, 846 F. Supp. 2d 980, 996–97 (N.D. Ill. 2012). The individual defendants are all residents of Mexico; the band members have no contacts with Illinois apart from the three shows they played here in July 2012 and Castañeda's only Illinois contact was in connection with scheduling and promoting these performances. They all state that litigating this case in the Northern District of Illinois would be unduly burdensome. On the other hand, Villalobos resides in the Northern District of Illinois and states that litigating this case in the Central California would be unduly burdensome as he does not have the financial resources to do so. Villalobos's role in managing Calibre Norteño, which tours nationally and internationally, somewhat belies his argument that he lacks the resources to litigate this matter outside the state. The prejudice associated with litigating the case in the Central District of California for Villalobos is equally felt by the individual defendants if they were forced to litigate the case in the Northern District of Illinois.

Last, although it is headquartered in California, UMG is a national corporation that has litigated numerous cases in the Northern District of Illinois. Plaintiffs argue that because UMS has defended suits in the Northern District on prior occasions, it would not be unreasonable for it do so again in this matter. Still, transfer must be determined on a case-by-case basis. *See*

---

[11] Plaintiffs argue that the majority of the witnesses in this case live in and around Illinois; however, they do not identify any of these witnesses. As they are opposing the motion to transfer, plaintiffs have the burden to offer evidence substantiating their arguments, which they have not done.

*Stewart Org., Inc.* v. *Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)

("Section 1404(a) is intended to place discretion in the district court to adjudicate motions for

transfer according to an individualized, case-by-case consideration of convenience and fairness."

(internal quotations omitted)). That UMG has previously been a defendant in the Northern

District of Illinois in matters unrelated to the present case does not militate against transfer. *See*

*Body Science LLC*, 846 F. Supp. 2d at 997. Considering that the only witness Villalobos has

identified is himself and that all of defendants' witnesses are either the individual defendants

who all live in Mexico or UMG employees in California, this factor warrants transferring the

case to the Central District of California.

### B.     Interests of Justice

In considering whether transfer is in the interest of justice, the court should consider "(1)

the speed at which the case will proceed to trial; (2) the court's familiarity with the applicable

law; (3) the desirability of resolving controversies in each locale; and (4) the relation of each

community to the occurrence at issue." *Allied Van Lines, Inc.* v. *Aaron Transfer & Storage, Inc.*,

200 F. Supp. 2d 941, 946 (N.D. Ill. 2002); *see also Carillo* v. *Darden*, 992 F. Supp. 1024 (N.D.

Ill. 1998) ("The interest of justice component embraces traditional notions of judicial economy,

rather than the private interests of the litigants and their witnesses." (internal quotation marks

omitted)).

First, neither side provides statistics regarding the speeds by which cases proceed to trial

in the Northern District of Illinois compared to the Central District of California. The court's

21

research[12] revealed that in the Central District of California, the average time from filing to disposition in civil cases is 5.4 months, and the average time from filing to cases proceeding to trial in civil cases is 19.1 months. In the Northern District of Illinois, the average time from filing to disposition in civil cases is 6.6 months and the average time from filing to trial is 34.5 months. That cases are proceeding faster in the Central District of California weighs in favor of transfer.

Second, plaintiffs allege claims premised on Illinois statutes—the Illinois Consumer Fraud Act and the Illinois Deceptive Business Practices Act and the Illinois Uniform Deceptive Trade Practices Act—in addition to an Illinois common law cause of action for unfair competition. As judges in the Northern District of Illinois are more familiar with Illinois law, this factor weighs against transfer. Still, that plaintiffs allege claims based on Illinois law, by itself, is not enough to deny transfer.

Furthermore, the third and fourth factors weigh in favor of transferring the case. Except for the three concerts in July 2012, all of the events giving rise to plaintiffs' claims occurred in the Central District of California where UMG promoted the Calibre 50 mark nationwide. That UMG is incorporated in the Central District of California provides that state with a local interest lacking here. *See, e.g., ORD Structure Innovations, LLC* v. *Oracle Corp.*, No. 11 C 3307, 2011 WL 4435667, at *4 (N.D. Ill. Sept. 22, 2011) ("[T]he majority of the accused products were developed in Northern California, and [the defendant] is headquartered there. This gives the Northern District of California a local interest that this Court does not possess.").

---

[12] These figures come from the website of the United States Courts detailing federal court management statistics as of March 2013.

While Illinois has an interest in redressing the injuries of its residents felt in the state, California has an equal interest in this matter because any injunctive relief against defendants will be enforced in California. *See SpankA Music & Sound Design, Inc.* v. *J. Hanke*, No. 04 C 6760, 2005 WL 300390, at *7 (N.D. Ill. Feb. 7, 2005) ("[W]hile Illinois has an interest in entertaining causes of action where injury is felt in Illinois, the fact that [the plaintiff] seeks injunctive relief against California residents and a California company increases California's interest in resolving the case.").

The court having considered the factors guiding its decision concludes that the balance weighs in favor of transfer in spite of the significant difficulty that transfer may impose on Villalobos's ability to litigate this case in a distant forum.

## CONCLUSION

For the reasons stated above, the motions (dkt. 18) are ruled on as follows: Ramos's motion to dismiss for insufficient service of process is granted without prejudice. The individual defendants' motion to dismiss for lack of personal jurisdiction is denied. All defendants' motion to transfer venue is granted. The Clerk is directed to transfer this case to the Central District of California on or after October 11, 2013.

ENTER:

Dated: September 27, 2013

_____
JOAN HUMPHREY LEFKOW
United States District Judge

23